W. Eames as tenants in common. That the plaintiff has no power or authority to sell and convey such residuary estate for the purpose of dividing the proceeds into two equal parts; one part for her use, etc., and one part for the children of Edward W. Eames. That the children of Edward W. Eames are tenants in common of the whole residuary real estate, each seised in fee simple of one undivided twelfth thereof, subject to the power of the plaintiff, as surviving trustee, to exercise the trust committed to her to divide the residuary real estate into two equal separate portions.

Judgment is accordingly ordered, with costs to all parties payable out of the estate.

Let findings be prepared.

---

## SIMONS v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

1. MASTER AND SERVANT (§ 180*)—FELLOW SERVANT—VICE PRINCIPAL.

   Railroad Law, § 42a, added to Laws 1890, c. 565, by Laws 1906, c. 657, provides that, in actions against a railroad corporation for the death or injury of an employé, it shall be held that persons engaged in service of any railroad corporation, who are intrusted with the authority of superintendence, control, or command of other persons in its employment, or with authority to direct or control any other employés in the performance of the duty of such employés, or who have as a part of their duty physical control of the movement of a signal, switch, locomotive, engine, car, train, or telegraph office, are vice principals, and not fellow servants of the injured employé. *Held*, that the conductor of a street car was a vice principal to the motorman in directing him to start, and the motorman was a vice principal as to the conductor in directing the car, so that the act of the motorman in starting the car pursuant to the conductor's signal was that of a vice principal, so as to make the company liable for its negligent performance, whereby the conductor was injured.

   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180.*]

2. MASTER AND SERVANT (§ 180*)—FELLOW SERVANTS—REGULATIONS—CONSTITUTIONALITY.

   The statute is constitutional as applied to a street railroad.

   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180.*]

3. MASTER AND SERVANT (§ 180*)—REGULATIONS—RELATIONSHIP OF EMPLOYÉ —CONSTRUCTION OF STATUTE.

   General Railroad Law, § 42a, added to Laws 1890, c. 565, by Laws 1906, c. 657, is also applicable to street railroads, unless a contrary intention is inferable therefrom; and section 42a is applicable to street railroads, though some of the terms therein refer exclusively to steam railroads.

   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180.*]

Appeal from Trial Term, Kings County.

Action by Philip Simons against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, JENKS, and THOMAS, JJ.

D. A. Marsh, for appellant.

Don R. Almy (Arthur J. Levine, on the brief), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

THOMAS, J.  The motorman started his car without signal from his conductor, whereby the latter was injured.  Hence this action.  The defendant gave plaintiff authority to direct the motorman in the performance of the duty of starting the car, and imposed upon the motorman the duty of physical control of the car.  By section 42a of the railroad law (Laws 1890, c. 565, as added by Laws 1906, c. 657) the conductor was vice principal as to the motorman in the matter of directing him, and the motorman was vice principal as to the conductor in directing the car.  So, if the conductor as such vice principal ordered the servant to start the car, and the servant started it negligently, and injured his vice principal, the act of the motorman was not the act of a servant, but that of a vice principal.  I find no incongruity. The master speaks through the conductor, and acts through the motorman.  The negligence of either is imputed to the master, and liability attaches.

In the present case the conductor had given no order, and in its absence the motorman acted.  The act, although negligent, was that of the master, and, as it hurt the unparticipating and passive conductor, the master is liable.  The conductor was not even privy to the act, but in any case his representative capacity was quite distinct from that of his motorman.  The master used two vice principals to act in conjunction in the operation of the car, one to direct starting and stopping, and one to start and stop as the first should indicate.  There is no confusion, if it be kept in mind that through each the master is performing duties that the statute in effect makes his own, and the negligent act of either conductor or motorman, whether obedient or disobedient, puts the master in the wrong.  Although the conductor directs for the master, he is not the master; and, when hurt by the motorman's negligence, he does not receive his injury as vice principal, but as an individual.  The defendant's proposition is that the motorman, disobeying or obeying, is the conductor's fellow servant. But the conductor, in discharging his duty, is not a fellow servant. So the motorman, in performing his duty, is not a fellow servant of the conductor.

The act has been considered valid in its application to a steam railroad (Schradin v. N. Y. C. & H. R. R. Co., 194 N. Y. 534, 87 N. E. 1126), and no reason appears for doubting its constitutionality in respect to a street railway.  But it is urged that it was not intended to affect railways of the latter class.  The general railroad law, of which section 42a is a part, is applicable to street railways, unless a contrary intention is expressed or is inferable.  Vail v. Railroad Co., 147 N. Y. 377, 42 N. E. 4, 30 L. R. A. 626.  Although the act of 1850 has primary reference to steam railroads, it has been found convenient to use it, when its appropriation for such purpose is suitable, for the formation and operation of street railways.  Reason for or against applicability aid the ascertainment.  The language used influences, and maybe compels, decision.  The change from horses to electric motors assimilates street railways to steam railroads in operation.  The agency for propulsion is used in both instances.  The effective power, the rapidity of motion, the momentum acquired, the possible abruptness

of starting and stopping, have converted the slow and halting horse car into an energized vehicle of transportation, menacing to safety, unless operated with correspondingly increased care, and approximating in such respects the steam railroad and its accompanying dangers. The street cars have the additional burden of more frequent interruption in their course, with oftener occurring manœuvering at terminals, where employés often collect. Hence appears propriety in applying the statute to street cars, as well as to steam cars. The terms of the section indicate intention to include street cars. It is true that the words "signal," "switch," "locomotive," "engine," "train," "telegraph office," indicate a steam railroad; but the word "car" is used, and switches are not foreign to street railways. But, as the railway law is used for both classes of railways, a section may well have terms, some or most of which are peculiar to a single class, and some common to both. So the meaning of the word "car" would not be inferred from its association. The "physical control or direction of the movement of a * * * car" is common on both kinds of railway, and without data for comparison it is evident that the number of cars operated upon street railways is quite sufficient to demand the statute.

There are several judicial suggestions or directions for determining whether a section of the act has dual application. The court in Vail v. Railroad Co., supra, held that the statute was broad enough to cover a street railway, but that the legislative intention was otherwise. This intention was found in the absence upon street railways of the peril of riding on the platform of a car, the use of the terms "trains," "baggage, freight, and wood cars," terms peculiar to steam cars, and the requirement that a notice was required to be posted in cars "then in the train," and the known use and permission to passengers by the carriers to use the platform of street cars. Without multiplying citations, the Vail Case indicates the means of construction employable. It shows that the terms used may be used, that conditions when the section was enacted may be consulted, that existing and permitted practices may reveal the legislative understanding of the need of the law. If a statute make an employé liable for the acts of his servants "in charge of a locomotive engine or train upon a railroad," the very words may exclude an electric car on a street railway, as decided in Fallon v. West End Street R. Co., 171 Mass. 249, 50 N. E. 536. A street car is neither a locomotive engine nor train. The peculiar terms can embrace only the single class. An examination of the several sections of the railroad law shows: (1) That many on their face show from the subject-matter whether they apply to one or both classes; (2) that certain sections are expressly limited to one class; (3) that certain sections are expressly extended to both classes. But the railroad law has been, so far as applicable, and except as to parts thereof expressly withheld, or inapplicable in subject-matter, appropriated to the formation, operation, and conduct of street railways. Hence there is presumed intendment of such application (Matter of Stillwater & M. St. Ry., 171 N. Y. 589, 64 N. E. 511, 59 L. R. A. 489), where it is said:

"The Legislature, in undertaking a revision of the railroad laws, attempted as far as possible to establish a complete system under which all kinds of railroads could be operated and the public interest subserved."

Moreover, the further matter in the section indicates the generality of the Legislature. For it provides for evidence and the probative force thereof in the case of an employé in the service of "any such railroad corporation," or of a receiver thereof, injured "by reason of any defect in the condition of the ways, works, machinery, plant, tools or implements, or of any car, train, locomotive or attachment thereto belonging." It is considered that the Legislature did not intend to make such defects presumptively known to the employer, and to predicate his negligence thereon in the case of a steam railroad company, and to deny the rule where a street railway company is concerned; nor did it intend to unite this matter common to both classes with a provision excluding one of them. The industry of counsel has presented decisions in foreign tribunals supporting their several contentions, and the plaintiff has the support of the decisions in Forton v. Crosstown Street Railway Co., 63 Misc. Rep. 237, 116 N. Y. Supp. 746, and Riccio v. International Railway Co., 63 Misc. Rep. 588, 117 N. Y. Supp. 720; and in the absence of opinion or record I am unable to verify his statement that this court in the First Department, in Clark v. New York City Railway Co., 134 App. Div. 963, 119 N. Y. Supp. 1120, favors his view.

The other objections to the recovery have been considered, and, while the accident was so peculiar as to demand very careful scrutiny, it is not impossible, or so improbable, in view of the evidence, as to demand a disturbance of the verdict.

The judgment and order should be affirmed, with costs.

JENKS and BURR, JJ., concur.

HIRSCHBERG, P. J. (concurring). In the opinion of Mr. Justice THOMAS two questions are considered: First, whether the motorman is to be regarded as the vice principal of the railroad company with respect to the conductor, by virtue of section 42a of the railroad law; and, secondly, whether that law is applicable to street railways. I concur in the opinion so far as it relates to the second question considered, but cannot concur as to the first. I do not think a motorman could possibly be considered the vice principal of the railroad with respect to the conductor, inasmuch as the rules of the company require the motorman to be at all times under the orders and direction of the conductor. But the question does not appear to have been raised in this case at the trial. When the case was tried, the law was deemed settled by the decision in Schradin v. N. Y. C. & H. R. R. R. Co., 194 N. Y. 534, 87 N. E. 1126; the decision in Hallock v. N. Y., O. & W. R. Co., 197 N. Y. 450, 90 N. E. 1124, not having then been made. So this case was tried by counsel and court upon the theory that the motorman was the vice principal, and that the defendant was liable to the plaintiff for the motorman's negligence. The counsel for the defendant took special pains to leave that question out of the case: At

the close of plaintiff's case he moved to dismiss the complaint, on the ground that the plaintiff had failed to prove a cause of action. Where-upon the trial court asked him:

"What point do you make it on? On the point that he has not shown a cause of action under 42a; or do you also raise the constitutional question?"

To which the defendant's counsel answered,

"Yes; I raise it upon the ground that 42a of the railroad law does not apply to a street railway company; that, if it does apply, it is in violation of the Constitution and discriminatory—on the fourteenth amendment to the United States Constitution."

At the close of the whole case the motion to dismiss was renewed "upon the same grounds stated upon the motion made at the close of the plaintiff's case."

WOODWARD, J., concurs.