ments in his answer of the facts as to which an examination was sought.

The order vacating the order for the examination before trial must be reversed, with $10 costs and disbursements, and the motion to vacate denied, with $10 costs.   All concur.

---

### GORMAN v. BROOKLYN, Q. C. & S. R. CO.

(Supreme Court, Appellate Division, Second Department.   November 10, 1911.)

1. MASTER AND SERVANT (§ 190*)—INJURIES TO MOTORMAN—"VICE PRINCIPAL" —STATUTES.

A motorman brought his car into the barn, and was engaged in fixing it for the night, and was standing in the rear of his car, when a second car, in charge of another motorman, came into the barn and stopped four feet away, and the conductor of the second car turned the trolley pole around to the front, and, being unable to place it, the motorman of the second car made the contact, whereupon the car moved suddenly forward, and the motorman of the first car was crushed between the cars. *Held*, that the motorman on the second car was a "vice principal" to the other motorman, within Railroad Law (Laws 1890, c. 565) § 42a, as added by Laws 1906, c. 657.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 190.*
For other definitions, see Words and Phrases, vol. 8, pp. 7313–7316, 7827.]

2. MASTER AND SERVANT (§ 289*)—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for the death of a motorman, killed by being crushed between his car, in the rear of which he was standing while fixing it for the night in a car barn, and another car coming in behind his car, evidence *held* sufficient to go to the jury on the question of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 289.*]

3. MASTER AND SERVANT (§ 229*)—CONTRIBUTORY NEGLIGENCE—DEGREE OF CARE.

What constitutes a reasonable degree of care on the part of a servant depends in a large measure on the nature of his duties and what he has a right to expect from his surroundings.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 674, 683;  Dec. Dig. § 229.*]

4. MASTER AND SERVANT (§ 289*)—CONTRIBUTORY NEGLIGENCE—AVOIDANCE OF DANGER.

It cannot be said as a matter of law that, where there is no danger apparent which would suggest itself to a reasonably prudent man, it is the duty of one actually in extreme peril to take affirmative steps to avoid the danger.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 289.*]

5. MASTER AND SERVANT (§ 276*)—CAUSE OF INJURY—EVIDENCE.

In an action for the death of a motorman, crushed between two cars in the car barns, evidence *held* to sustain a finding of the jury that the accident was caused by the failure of another motorman to turn off the power, on the power giving out as the car came into the barn.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 276.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Kings County.

Action by Maggie Gorman, administratrix, etc., of Thomas Gorman, deceased, against the Brooklyn, Queens County & Suburban Railroad Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, WOODWARD, and RICH, JJ.

D. A. Marsh, for appellant.

John S. Wise, Jr. (William J. Mahon, on the brief), for respondent.

WOODWARD, J. Plaintiff's intestate was employed by the defendant as a motorman on one of its cars, and on the evening of June 19, 1908, he had run his car into the defendant's car barn, and was engaged in preparing it to remain over night; the exact details of what he was doing being lacking in the record. While thus employed, a second car, operated by the defendant's servants, came into the barn and stopped about four feet away from the decedent's car. The decedent appears to have been upon the track, between his car and the second car, with his hands up, probably engaged in placing his trolley pole. The conductor of the second car pulled down the trolley pole, turned it around to the front end, where the motorman was standing, and, being unable to place the trolley pole from his standpoint, the motorman on the front platform took the rope, reached out over the dashboard and placed the trolley wheel in contact with the overhead wire. As soon as the contact was made the second car moved suddenly forward, and plaintiff's intestate was crushed between the two cars and killed.

[1, 2] It is urged upon this appeal that the motorman of the second car was not the defendant's vice principal, under the provisions of section 42a of the railroad law (Laws 1890, c. 565), as added by Laws 1906, c. 657, and that the record fails to show evidence of absence of contributory negligence on the part of decedent. We are of the opinion that the case is one falling within the provisions of section 42a of the railroad law; that the motorman had physical charge of the operation of the car. And we are also of the opinion that the evidence is sufficient to entitle the jury to pass upon the question of contributory negligence.

[3] What constitutes a reasonable degree of care on the part of a decedent depends in a large measure upon the nature of his duties and what he has a right to expect from the surroundings. The evidence shows clearly that the second car had come into the barn and had come to a full stop about four feet from the rear of the decedent's car; and, in the natural course of operation, the car would not start without the affirmative action of the motorman of the car, and the motorman of the second car was in his position in the front of the car, where he had a full opportunity to observe the presence of the decedent, and the latter had no reason to anticipate that this motorman would wantonly run him down, or that the car would start of its own accord, so that he was at liberty, in the ordinary routine

of his day's labor, to make the changes of fenders, to change the location of his trolley pole, or to do any of the things which were necessary or proper in leaving his car for the night. Having no danger to anticipate he was not required to use any high degree of care, and the evidence indicates that he simply went on about his work in the usual way.

[4] The jury had a right to draw the inference from the testimony that the plaintiff's intestate did nothing which in any measure contributed to the accident; for it cannot be held, certainly as a matter of law, that where there is no danger which would suggest itself to a reasonably prudent man it is the duty of one about to be killed to take affirmative steps to avoid the danger. If the second car had acted only in the usual way, under the control of the motorman, there was no danger reasonably to be apprehended. It was only because the car started while the motorman was not at the controller that the accident occurred and it was not such an accident as any one would have anticipated; and as the accident was due wholly to the action of the second car, and that car was in no wise controlled by the decedent, he could not be held to have contributed to the accident merely because he was upon the track between the cars in the discharge of his duties. We think the case properly went to the jury upon the question of contributory negligence.

[5] The evidence establishes that the second car came into the barn, and that the power failed just as the car was about 20 feet from the point where it stopped; that the conductor brought the trolley pole around to the front; that the motorman took hold of the rope and made a contact with the trolley wire, and that the car suddenly started forward, doing the injury before the motorman could reach the brake. The defendant's theory is that the motorman in leaning over the controller box came in contact with the controlling lever in some manner and turned on the current when the trolley made the contact with the wire; but the evidence is not strong in support of this theory, and the more probable view is that, the power having failed as the car came into the barn, the motorman neglected to turn off the current, and that when the contact was made with the wire, with the return of the power, the car was ready to move, and did exactly what it was bound to do under the circumstances. This seems to have been the view taken by the jury, and we think the evidence justifies this inference.

The judgment and order appealed from should be affirmed, with costs. All concur.