(152 App. Div. 483.)

### SMITH v. AMERICAN ICE CO.

(Supreme Court, Appellate Division, Second Department. September 10, 1912.)

1. MASTER AND SERVANT (§ 289*)—ACTION FOR INJURIES—QUESTION FOR JURY —CONTRIBUTORY NEGLIGENCE.

In an action for the death of the conductor of a street car, killed by being crushed between the car and an ice wagon standing behind it, evidence *held* sufficient to go to the jury on the question of deceased's contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

2. MASTER AND SERVANT (§ 278*)—ACTION FOR INJURIES—WEIGHT OF EVIDENCE—NEGLIGENCE OF MASTER.

Evidence in an action against a street railroad for the death of a street car conductor, killed by being crushed between the car and an ice wagon standing behind it, *held* not to establish negligence on the part of the defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954– 972, 977; Dec. Dig. § 278.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Kings County.

Action by Michael J. Smith, as administrator of Peter Skelly, deceased, against the American Ice Company and the Brooklyn Heights Railroad Company. From an order of the Supreme Court, entered in the office of the clerk of the county of Kings, setting aside a verdict in his favor and against the defendant the Brooklyn Heights Railroad Company, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and WOODWARD, JJ.

Martin T. Manton, of Brooklyn (Burt L. Rich, of Brooklyn, on the brief), for appellant.

D. A. Marsh, of Brooklyn, for respondent.

WOODWARD, J. This action, originally brought against the American Ice Company and the Brooklyn Heights Railroad Company, was dismissed as to the Ice Company, and, as there is no appeal from the order of dismissal, the case is to be treated as though there was only the defendant Brooklyn Heights Railroad Company involved. The action is to recover damages for personal injuries, resulting in death, alleged to be due to the negligence of the defendant in the operation, through its motorman, of a freight car. The evidence was submitted to the jury, resulting in a verdict for $5,500, and on motion of the defendant this verdict was set aside. The learned court handed down a memorandum in connection with the order from which this appeal is taken, in which it is said:

"The court erred in denying the motion to dismiss the complaint. A careful reading of the minutes reveals no evidence from which the jury should be permitted to find the plaintiff's intestate free from negligence contributing to the injury or the defendant negligent."

[1] We are unable to agree with this view of the case, though inclined to the opinion that the court might properly set aside the verdict as being against the weight of evidence. The evidence is to the effect that the defendant's motorman was operating a freight car upon Second avenue, in the borough of Brooklyn, on the 29th day of August, 1908; plaintiff's intestate being employed at the same time as conductor on said car. There is a switch at Fifty-Second street, and at this point the forward trucks ran straight ahead on the main track, while the rear trucks went in on the switch, so that the rear end of the car was thrown around at a considerable angle with the track on which it had been proceeding. This position of the car operated to throw the trolley from the power wire, and plaintiff's intestate got out in the street, with the trolley rope in his hand, and, while standing at the rear right-hand corner of the car, undertook to adjust the trolley pole to the power wire. This necessarily took his vision away from the street and centered it on the wire overhead. While this work was going on, an ice wagon came up Fifty-Second street, intending to cross Second avenus. The car was standing still, and the driver of the ice wagon drew his team around from the direct line, going to the rear of the

car, and then swinging around to the right-hand side of the car, for the purpose of continuing along Second avenue, describing a semicircle around from the left to the right hand side of the car. Just as his team had crossed the main track, and while the rear wheels were about upon the track, the car was started and backed up in such a manner that plaintiff's intestate was caught with a swinging movement between the rear platform of the car and the hub of the wheel of the ice wagon, and crushed so that he subsequently died.

There is some evidence in the case from which the jury might draw the inference that the car was started without any warning to the plaintiff's intestate, and at a time when his attention was centered upon the wire above his head, and, as trolley cars do not start, as a rule, without some affirmative action, or the neglect of proper precautions, there is ground for holding, under the provisions of section 42a of the Railroad Law, as added by Laws 1906, c. 657 (Gorman v. Brooklyn, Queens County & S. R. R. Co., 147 App. Div. 21, 23, 131 N. Y. Supp. 686), that the defendant was guilty of negligence in the operation of the car, and the inference might be drawn that the plaintiff's intestate, in the discharge of his duties, was not bound to anticipate that this car would be started without his signal, or at least without some warning, and that he was in the exercise of reasonable care in the work which he was performing. The case cannot be distinguished on this point from that of Gorman v. Brooklyn, Queens County & S. R. R. Co., supra, and, if the evidence was clear upon this point, we should have no doubt that the order appealed from should be reversed.

The fairer inference from the evidence, however, is that plaintiff's intestate got down from the car for the purpose of adjusting the trolley pole, and that he was standing at the side of the car, near the rear, and that it was his intention, and that of the motorman, that the car should be started back as soon as the trolley connection was made, and that the plaintiff's intestate, after the car was in motion, walked backward with his eyes turned upward to the wire, without noticing that the wagon had been driven into a position dangerous to himself. One of the plaintiff's witnesses, who says he saw the accident, testifies that:

"The car was standing still when we started around [with the wagon]. I saw the conductor on the ground. He was standing about the center of the rear car getting the pole, and as soon as the pole touched the wire there was a backing up; there was no sound or bell, not a word said. He was looking toward the front of the car, walking backwards the same time the car was backing, looking towards the front. When the car started back, he was looking towards Thirty-Ninth street. He was standing about four feet away from the rear corner, the back corner of the car. * * * I saw the car start back, and we was on the track, going towards the track. It started pretty quick. The conductor was standing, at the time it started, about four feet up, about four feet away from the car. * * * I saw this conductor near the center of the car, and he had the rope in his hand, and he was looking up and working with the rope, working backwards, and the next thing I knew was when I heard the yell."

Another witness testifies that:

"The conductor was on the side of the car at the rear end, right almost the extreme end, you may say, near the corner of the car—exactly. I would

judge he was standing away from the car three or four feet, something like that—away from the car. * * * I say the conductor was about three or four feet away from it when it started. The truck was about eight feet from it, more or less; so the conductor was about half way between the car and truck. I did not hear any signal, or shout, or anything of that sort, by the conductor when the car started."

[2] Assuming the truth of this statement, the situation is consistent with reasonable care on the part of the defendant's motorman. There had been an accident. The motorman and conductor were engaged in getting the truck back upon the Second avenue track. The motorman, we may assume, knew that the conductor was manipulating the trolley pole. The conductor was on the right-hand side of the car, about four feet away, and well to the rear. If the motorman was watching him and operating his car at the same time, in an effort to get the truck back into position, he would not be in a position to observe the approaching ice wagon. His attention would be divided between watching the conductor, who was from his viewpoint on the right-hand side of the car, out of danger, and operating the levers which control the car. The ice wagon came up on the side of the car, and swung around in a half circle until it passed the right-hand corner of the car, about eight feet away, and the conductor was between the wagon and the car, walking backward, with the car moving. If the car was started before the wagon came into view of the motorman, and while his attention was taken up with the problem of getting his car into position, it was not negligent of him to continue to let the car move backward, in view of the position of the conductor and the fact that he received no signal to stop. The conductor was at the rear of the car, walking backward, so one witness says, and the motorman was not bound to stop the car without a signal, unless he was in a position to know the danger to which the conductor was exposed, and the driving of the ice wagon around the end of the car was not one of the things he was bound to anticipate under the circumstances of this case. This view of the case is, we believe, supported by the weight of evidence, and, while we are persuaded that the plaintiff's intestate might properly be held to be free from negligence under the circumstances disclosed, we are at the same time disposed to hold that the evidence is not strong in support of the theory of negligence on the part of the defendant, and that the court very properly set aside the verdict and granted a new trial.

Our conclusion is that it was error to set aside the verdict on the ground that there was "no evidence from which the jury should be permitted to find the plaintiff's intestate free from negligence contributing to the injury or the defendant negligent." We do think, however, that an order setting aside the verdict on the ground that it was against the weight of evidence would have been proper.

The order is therefore affirmed; costs to abide the event.

HIRSCHBERG and CARR, JJ., concur. THOMAS, J., votes to affirm, upon the ground that no negligence on the part of respondent is shown, with whom JENKS, P. J., concurs.