dealings were had. That evidence tended to prove that the brother, as plaintiff's agent, made the contract with the plaintiffs through Campbell, who, as has been stated, occupied the dual role of president of the Barnes-King Development Company and special partner in defendants' firm. There was no proof that Campbell was actually authorized by the defendants to make the contract for them. There was no conclusive proof that the defendants ratified their special partner's act. The plaintiff sought to spell ratification out of the delivery of the stock by the defendants and the receipt by them of the moneys deposited as security. But the defendants proffered evidence tending to prove that the stock came from Campbell and others, that their firm was simply the channel through which the stock passed from Campbell and others into the hands of Fischer, that the transaction was between Campbell and Fischer personally, and that the acts of the defendants were performed, not as principals, but merely in the capacity of stockbrokers. This evidence was excluded.

[1] Defendants also proffered evidence tending to show what the special partner told the general partners he had agreed upon with the plaintiff or his agent. This evidence was erroneously excluded. Where there is no proof of any agreement with any general partner, ratification by the general partners of a contract made by a special partner is to be ascertained from the entire transaction, including the statements which the special partner made to the general partners. See Meserole v. Archer, 3 Bosw. 376.

[2] We are of opinion that it was error to direct a verdict. The credibility of the witness, plaintiff's brother, is a proper subject for the jury's consideration. Kavanagh v. Wilson, 70 N. Y. 177. It is the province of the jury to determine whether or not the transaction between plaintiff's brother and the special partner, as testified to by the brother, was actual. If found to be an actual transaction, it is for the jury to say whether or not the defendants ratified it. Chapter 420, Laws of 1897 (chapter 51 of the General Laws [the Partnership Law in force at the time]); Baldwin et al. v. Burrows et al., 47 N. Y. 199; Ritch v. Smith, 82 N. Y. 627.

The judgment and order must be reversed, and a new trial granted; costs to abide the event. All concur.

---

### LARSON v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department. February 11, 1915.)

1. MASTER AND SERVANT (§ 198*)—MASTER'S LIABILITY—"FELLOW SERVANT."
    Under the common law, a motorman and a conductor were fellow servants.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 493–514; Dec. Dig. § 198.*

    For other definitions, see Words and Phrases, First and Second Series, Fellow Servant.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 190*)—MASTER'S LIABILITY—FELLOW SERVANT—
VICE PRINCIPAL.

Even if the conductor on a street car was a vice principal, his action
in pulling the trolley pole from the overhead current wire and cutting
off the power, which worked the automatic pump furnishing air for the
brakes, when he did not know that the brakes had leaked during the
trip, and could not hear any noise indicating that the pump was in mo-
tion, in consequence of which the leak released the air brakes and the
car·ran against the motorman, who, unknown to the conductor, had gone
in front of the car, was not itself negligent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–
474; Dec. Dig. § 190.*]

3. MASTER AND SERVANT (§ 180*)—FELLOW SERVANT—"VICE PRINCIPAL"—
STATUTES.

Under Railroad Law (Consol. Laws, c. 49) § 64, providing that, in an
action against a railroad for the death of an employé, persons intrusted
with the authority of superintendence, control, or command of other per-
sons, or having physical control of the improvement of cars, etc., are vice
principals, a conductor who pulled the trolley pole from the overhead cur-
rent wire, and cut off the current working the pump which supplied the
air brakes, merely as an adjustment of the motive power system, so that
the car might be started on its return trip, was not a "vice principal."

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 359–
361, 363–368; Dec. Dig. § 180.*]

For other definitions, see Words and Phrases, First and Second Series,
Vice Principal.]

4. MASTER AND SERVANT (§ 265*)—ACTION FOR INJURY—PRESUMPTION—DIS-
CHARGE OF DUTY.

Mere proof of the starting of a car after the trolley pole had been
pulled from the current wire, and the striking and killing of the motor-
man, who had gone in front of the car, did not disturb the presumption
that the master had discharged his duty of inspecting the air brakes;
and before liability could be cast upon the master, the brakes must have
been out of order for a period which would justify an imputation of a
lack of proper inspection.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–
908, 955; Dec. Dig. § 265.*]

5. MASTER AND SERVANT (§ 124*) — MASTER'S LIABILITY — APPLIANCES FOR
WORK—INSPECTION.

Where a motorman, taking his car for a trip, found the usual air pres-
sure indicated, and did not notice anything unusual until some time there-
after, when the pump supplying the air worked after fewer applications
of the brake than was usual, and where there was nothing dangerous in
the consequent leak of the air, and there was a hand brake on the car,
and where there was no direct proof to show what inspection was prac-
ticable, except evidence of plaintiff's expert that he did not know whether
such a leak would be discovered, even by running the car for two blocks,
or for less than six blocks, there was no legal obligation on the part of
the company to inspect the brakes before the trip.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–
242; .Dec. Dig. § 124.*]

6. MASTER AND SERVANT (§ 265*)—MASTER'S LIABILITY—INSPECTION—STAT-
UTES.

Railroad Law, § 64, providing that if a railroad employé is injured
from any defect in any car, or attachment thereto, which might have been
discovered by reasonable and proper care and inspection, the railroad
shall be deemed to have had knowledge of the defect before injury there-
from, and that proof of such defect shall be prima facie evidence of neg-
ligence, does not insure the employé, but merely affects his right of re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

covery for negligence, and before he can invoke it he must show, not only the defect, but the failure to exercise reasonable care or inspection; and proof that an inspection might have discovered a leak in the air brakes of a street car did not remove the question of reasonable inspection from the field of conjecture.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

**7. MASTER AND SERVANT (§ 129*)—ACTION FOR INJURY—PROXIMATE CAUSE.**
Where it was not within the scope of reasonable prudence and foresight to have anticipated that a motorman would leave his car with the air brakes set, without setting the hand brakes, and that the car would start because of a leak in the air brakes, and strike and kill him, negligence, if any, in not inspecting the air brakes, was not the proximate cause of his death.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

Thomas and Rich, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by John Larson against the Nassau Electric Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Martin T. Manton, of New York City (Vine H. Smith, of New York City, on the brief), for appellant.

D. A. Marsh, of Brooklyn, for respondent.

JENKS, P. J. This is an action at common law for negligence, brought against a master by a servant, who invokes sections 64 of the Railroad Law and 202a of the Labor Law (Consol. Laws, c. 31, as amended by Laws 1910, c. 352). The plaintiff was dismissed at the close of his case.

The defendant's street surface railway was worked by the trolley system. Plaintiff, a motorman, left his car at a standstill and went forward for four or five feet to another car, to release the trolley pole of the forward car from contact with a circuit breaker, so that the motorman of that car could drive it forward. As plaintiff stood within the tracks, he was run down by his own car. The theory of the plaintiff is that this car started because its air brake, which the plaintiff had set, failed to hold it, and there was a slight grade downwards; and his proof is that the air brake leaked so that the brake could be applied twice only, without replenishment of air, instead of four or five times, or even ten times, as was usually the case. The brake was replenished with air by an automatic pump in the car, worked by the same electric current that furnished motive power to the car. There is no contention that this pump was not in good order. But, after the plaintiff had left his car to go forward, his conductor, after his passengers had left in transfer to this forward car, went down from the platform and pulled the trolley pole of this car from the overhead electric current wire, and thus cut off the electric current which worked the automatic pump, so that, when the leakage gradually reduced the pressure on the brake,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the pump could not restore the pressure required to make the brake effective.

[1, 2] Under the common law, the plaintiff and his conductor were fellow servants. But the plaintiff insists that the conductor was a vice principal under the provisions of section 69 of the Railroad Law. This contention rests specifically upon the bit of evidence, elicited from the plaintiff, that ordinarily the conductor of a car handles the pole of it. I will assume for the discussion that the conductor was a vice principal. Even so, I think that there is no proof of negligence. It is not shown that the conductor had or should have had any knowledge of the alleged leakage. There is no proof that the pump was working when the conductor removed the trolley pole. There is no proof of the time when it had worked last. It is an extreme contention that the conductor must have known that the brake leaked because during the trip the pump worked after two applications of the brake, instead of a greater number. It does not even appear that the conductor in his position could hear the rattling noise that indicated that the pump was in motion. It is true that the conductor, called by the plaintiff, testifies:

"Not thinking at the time that we had not cleared the cross-over, I unconsciously pulled the pole from the wire."

But "unconsciously" does not indicate that he knew, if he pulled down the pole, that the car would or could move. It refers to the fact that he forgot, as he says, that the car had yet to continue on its way over the cross-over *before* the pole should be shifted for the return trip. There is no proof that the conductor knew that the plaintiff had left the car at all. There was nothing in the situation that could have charged him with knowledge that the plaintiff had left the car to adjust the pole of the forward car, for it was the duty of the conductor of that car to adjust it.

[3] I think that the conductor was not a vice principal. Thomas, J., writing for this court, said that a conductor was a vice principal as to his motorman in the matter of directing him, and a motorman was vice principal as to his conductor in directing the car; that the master speaks through the conductor and acts through the motorman. Simons v. Brooklyn Heights R. R. Co., 142 App. Div. 36, 126 N. Y. Supp. 792. This conductor was adjusting a part of the motive power system. The act was not done in physical control or direction of the car, but was done to put the car in a condition so that it could be moved in the direction required by its return trip, by the motorman, who was in that respect the vice principal. See Hart v. N. Y. C. & H. R. R. R. Co., 205 N. Y. 321, 98 N. E. 493. See, too, Gorman v. Brooklyn, Queens County & S. R. R. Co., 147 App. Div. 21, 131 N. Y. Supp. 686. There was no direction or control in this act of the conductor that was "conferred by or proceeds from superior authority" (see Hallock v. New York, O. & W. R. Co., 197 N. Y. 450, 90 N. E. 1124, 52 L. R. A. [N. S.] 1142), as if, e. g., the conductor had signaled to the motorman to drive the car.

[4] I fail to see any liability cast on the defendant for the alleged defect in the brake. I will consider the question first without regard to section 64 of the Railroad Law. Mere proof of the accident did not

disturb the presumption that the master had discharged his duty, and before liability could be cast upon the master the brake must have been out of order for a period that would justify the imputation of lack of proper inspection. This proposition is stated and fortified by authorities by Carr, J., writing for this court in Schlappendorf v. American Railway Traffic Co., 142 App. Div. 554, 127 N. Y. Supp. 44.

[5] The plaintiff took charge of this car at Thirty-Sixth street, a point in the trip, in relief of a fellow motorman. He testifies that at that time the air pressure indicated was usual, and that he did not notice the "something unusual" until he was on his way from Thirty-Sixth to Sixty-Ninth street. The "something unusual" was that the pump worked after fewer applications of the brake than was usual with such brakes. For aught that appears, the leak may have developed first after the car had left Thirty-Sixth street. We cannot infer that inspection, even at the outset of the trip, or even during the trip until after the car had left Thirty-Sixth street, would have shown this defect. How could there be any imputation of lack of proper inspection in this case, unless it was founded upon the proof that the leakage developed during the trip? It seems to me that the obligation of master and servant could not require any such extreme precaution as to have inspection during each trip. There was nothing perilous in such a leak, for the result thereof was but to set the automatic pump working sooner than was usual. Moreover, there was a hand brake on this car. Indeed, the plaintiff admits that, if he had set the hand brake when he left the car at a standstill, the car could not have come down upon him. In De Graff v. N. Y. C. & H. R. R. R. Co., 76 N. Y. 130, the court intimates that inspection of brake chains on a steam railroad during every trip would be unreasonable.

But it has been suggested that there should have been inspection before a car was sent out. In this case, as I have said, there is no proof that the defect was in existence at such a time. But, aside from this lack of proof, it seems to me that this requirement would put too great a stress upon a master in relation to his servant. We are ignorant as to whether there was inspection or not, because the plaintiff was dismissed, and therefore the defendant was not called upon for any proof. There is no direct proof to show what inspection was practicable. But we may perhaps infer from the evidence of plaintiff's sole expert as to a kind of inspection that was possible. The plaintiff's expert testifies that he did not know whether such a leak could be discovered even by running the car for two blocks, or for less than six blocks; i. e., whether it could be discovered that the air was going out "faster than it should." In the light of this testimony it would follow that the duty, if any, owed to the servant, would be a trial trip of every surface car for at least six blocks, in order to ascertain whether the air brake "leaked." When we remember the character of the car, its equipment with a hand brake, as well as an air brake, and that the sole result of the leak was to bring the automatic pump into play more frequently, and that therefore the defect was negligible, it seems to me that there could not be any legal obligation upon the master to make such an inspection. In ad-

dition to the case last cited, see Louisville, etc., R. Co. v. Bates, 146 Ind. 569, 45 N. E. 108; A., T. & S. F. Rld. Co. v. Ledbetter, 34 Kan. 333, 8 Pac. 411; Smoot v. Mobile & Montgomery R. Co., 67 Ala. 20.

[6] But, as I have said, the plaintiff invokes section 64 of the Railroad Law, that provides:

"If an employé, engaged in the service of any such railroad corporation, or of a receiver thereof, shall receive any injury by reason of any defect in the condition of the ways, works, machinery, plant, tools or implements, or of any car, train, locomotive or attachment thereto belonging, owned or operated, or being run and operated by such corporation or receiver, when such defect could have been discovered by such corporation or receiver, by reasonable and proper care, tests or inspection, such corporation or receiver shall be deemed to have had knowledge of such defect before and at the time such injury is sustained; and when the fact of such defect shall 'be proved upon the trial of any action in the courts of this state, brought by such employé or his legal representatives, against any such railroad corporation or receiver, on account of such injuries so received, the same shall be prima facie evidence of negligence on the part of such corporation or receiver."

This statute does not insure the employé; it but affects his right of recovery for negligence. It does not make the proof of a defect sufficient, but only such defect as could be discovered by reasonable and proper care, tests or inspection. It is not a question of defect, alone, but of duty also. Before this plaintiff can invoke the statute, he must bring his case within it. Mere proof of a defect does not necessarily make it one that can be discovered by reasonable and proper care, tests, and inspection. Doubtless there could be such a defect as in itself afforded proof that reasonable and proper care, tests, or inspection would discover it. But if the defect is not of such character, and the defect in this case was not, there must be proof that would justify the conclusion that the master failed to exercise care, or test, or inspection that was reasonable or proper. To prove by a witness that "care," or "inspection," or "tests," in so many words, and nothing more, could discover the defect, would set the jury free in the field of conjecture or speculation as to whether such "care," or "inspection," or "test," was reasonable or proper. See Carlson v. P. B. Co., 132 N. Y. 273, 30 N. E. 750; Painton v. Northern Central R. Co., 83 N. Y. 7. I think that after a sound statement of the rule in Ballard v. Hitchcock Mfg. Co., 51 Hun, at page 193, 4 N. Y. Supp. at page 942, the court well comments:

"The instructions given, and to which exceptions were taken, went further than this, and required the defendant to show that he had applied all known tests to determine the safety of the boiler. If an obligation as onerous as this rests upon the master, it can only be found in those cases where the hazard is great, and where it is shown that known tests exist and could be applied to discover any latent or concealed defect, and to guard against the results which might reasonably be expected to flow therefrom, and that the master had failed to apply them. Cahill v. Hilton, 106 N. Y. 512 [13 N. E. 339]. In this case we find no evidence showing what known tests existed, which the defendant could apply to discover the alleged defects, and which were omitted; and the jury were left to determine of their own volition what tests, in their judgment, the defendant ought to have applied."

In Palmer v. D. & H. C. Co., 120 N. Y. at page 176, 24 N. E. at page 304 (17 Am. St. Rep. 629, speaking of inspection, Bradley, J., says for the court:

"It must, in view of the circumstances appearing by the evidence, be one of fact for the jury to determine upon proper instructions relating to the degree of care imposed upon the company; and while it is true that the question of fact so presented is somewhat speculative, in the sense that it is not measured by any definite rule, it must nevertheless become a matter of judgment to be expressed by the jury and founded upon the evidence."

See, too, Jarvis v. Northern N. Y. Marble Co., 55 App. Div. 275, 67 N. Y. Supp. 78.

The case is defective in this respect, for the sole bit of evidence on this subject is contained in the following question asked by the plaintiff of his expert:

"Are leaks discoverable upon inspection? A. Yes, sir."

Conceding in all fairness that the leaks referred to are leaks in this kind of brake, there is nothing more than the statement that inspection could discover the leaks. But proof that an "inspection" might discover the leak does not remove the question of *reasonable* inspection from the field of speculation or conjecture. With reference to the possible inspection indicated by the testimony of the expert heretofore discussed, I think, for the reasons heretofore stated, that such testimony did not justify the submission to the jury of the question whether the defect could have been discovered by reasonable or proper care, tests, or inspection.

[7] Finally, I have the gravest doubt whether there could be any liability cast upon the defendant. The plaintiff could not have been injured if he had remained at his post, instead of leaving the car as a volunteer to do another's work, and not then, save that the conductor prematurely cut off the power of the pump, and not then, save that plaintiff had omitted to set the hand brake. If the result was not within the ken of reasonable prudence and foresight, then proximate cause is not established. Beetz v. City of Brooklyn, 10 App. Div. 382, 41 N. Y. Supp. 1009; McKenzie v. Waddell Coal Co., 89 App. Div. 415, 85 N. Y. Supp. 819; Saverio-Cella v. Brooklyn Union R. R. Co., 55 App. Div. 98, 66 N. Y. Supp. 1021; Stafford v. Canavan Brothers Co., 135 App. Div. 889, 120 N. Y. Supp. 314; Jex v. Straus, 122 N. Y. 293, 25 N. E. 478.

I advise that the judgment be affirmed, with costs.

BURR and CARR, JJ., concur. THOMAS, J., dissents, upon the ground that the existence of the defect was prima facie evidence that defendant had not used requisite care, tests, or inspection. The action of the conductor is not a ground of liability, but enabled the negligent omission of the defendant to come into play. RICH, J., concurs with THOMAS, J.